UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

RESTSEARCH.COM, INC., and                                  Case No. 16-14010

NATIONAL RESTAURANT BROKERS, INC.,

        Plaintiffs,

v.

DORTCH HALO ENTERPRISES, LLC,

        Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES RESTSEARCH.COM, INC., by and through its attorneys Revision Legal, PLLC, and for its Complaint and Demand for Jury Trial states the following:

### I.  INTRODUCTION

1. This is an action for breach of contract or, in the alternative, unjust enrichment arising out of Defendant Dortch Halo Enterprises, LLC's sale of the Halo Burger Restaurant chain and Halo Country, LLC's purchase of that chain.

2. Plaintiffs' Complaint alleges that Defendant Dortch Halo Enterprises, LLC has breached its contractual obligation to pay a marketing commission to Plaintiffs for the introduction of Defendant Dortch Halo Enterprises, LLC to Halo Country, LLC to consummate the sale of the Halo Burger Restaurant chain.

### II.  PARTIES, JURISDICTION, AND VENUE

3. Plaintiff Restsearch.com, Inc. ("Restsearch.com") is a corporation organized under the laws of the State of Georgia with its principal place of business in Alpharetta, Georgia.

4. Plaintiff National Restaurant Brokers, Inc. ("National Restaurant Brokers") is a corporation organized under the laws of the State of Georgia with its principal place of business in Alpharetta, Georgia.

5. Defendant Dortch Halo Enterprises, LLC ("Dortch") is a limited liability company organized under the laws of the State of Michigan with its principal place of business in Grand Blanc, Michigan.

6. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between Plaintiffs, citizens of the State of Georgia, and Defendant, a citizen of the State of Michigan.

7. This Court has personal jurisdiction over Defendant because Defendant is a resident of the State of Michigan, Defendant has purposely availed itself of the privilege of acting in Michigan, Defendant committed intentionally tortious actions within the State of Michigan, and Defendant's acts and/or consequences have a substantial enough connection with Michigan to make the exercise of jurisdiction reasonable. The exercise of jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant resides in this district and Defendant is a resident of the State of Michigan.

### III.   DEFENDANT'S UNLAWFUL ACTIONS

9. Plaintiff National Restaurant Brokers is a marketing company that helps advertise and match buyers and sellers to facilitate the sale of single-unit and multi-unit restaurants.

10. Plaintiff National Restaurant Brokers has extensive experience in understanding the market for the sale of restaurant businesses and relies heavily on its connections to a wide range of professionals, from executives at publicly traded franchisors to investment bankers, to facilitate deals within the restaurant industry.

11. Plaintiff Restsearch.com is a website dedicated to helping match buyers and sellers of single-unit and multi-unit restaurant businesses throughout the United States.

12. Plaintiff Restsearch.com is wholly owned by National Restaurant Brokers.

13. Prior to January 2016, Defendant Dortch was the owner of the Halo Burger restaurant chain.

14. Defendant Dortch purchased the restaurant chain in 2010 from Terry Thomas, son of Flint icon and respected businessman Bill Thomas, who purchased the restaurant in the 1960s.

15. In May of 2010, Bob Grabowski, CFO of Dortch Enterprises, LLC, contacted National Restaurant Brokers to inquire about purchasing a business listed with Restsearch.com.

16. At this time, Mr. Grabowski was presented with a confidentiality agreement that outlined National Restaurant Brokers' terms, including that Dortch would be responsible for ensuring that the seller of the listed business paid National Restaurant Brokers its published commission in the event Dortch "or any client or affiliated or related party" bought the listed restaurant. See **Exhibit A**, Confidentiality Agreement.

17. Upon information and belief, Mr. Grabowski signed the Confidentiality Agreement and returned it to National Restaurant Brokers.

18. Several years later, in November of 2014, Mr. Grabowski met with National Restaurant Brokers in person at the Restaurant Finance and Development Conference in Las Vegas, Nevada.

19. At this time, Mr. Grabowski indicated to National Restaurant Brokers that Dortch was interested in selling the Halo Burger restaurant chain.

20. After this meeting, National Restaurant Brokers sent Mr. Grabowski an "Authorization for NRB to Proceed" form containing the terms under which National Restaurant Brokers would connect Dortch with a buyer for its Halo Burger restaurant chain. See **Exhibit B**, "Authorization for NRB to Proceed."

21. Specifically, this form outlined National Restaurant Brokers' commission structure:

    a. For the first $500,000 of the sale price of the business, National Restaurant Brokers would receive a commission of 8%;

    b. For the next $500,000 of the sale price of the business, National Restaurant Brokers would receive a commission of 6%;

    c. For the next $500,000 of the sale price of the business, National Restaurant Brokers would receive a commission of 4%; and

    d. For the remainder of the sale price of the business, National Restaurant Brokers would receive a commission of 2%. See **Exhibit B**, "Authorization for NRB to Proceed."

22. In this same email, National Restaurant Brokers requested that Dortch provide National Restaurant Brokers with its profit and loss statement and requested valuation so that National Restaurant Brokers could evaluate the proposed sale price.

23. Dortch did not sign the "Authorization for NRB to Proceed" as requested.

24. In March of 2015, Dortch reengaged National Restaurant Brokers and requested a call to discuss its business listing.

25. After this call Dortch sent National Restaurant Brokers a non-disclosure agreement, its financials, and a sales portfolio outlining its business assets, sales information, and profitability. See **Exhibit C**, April 10, 2015 email.

26. In May, Dortch complained about National Restaurant Brokers' commission structure and indicated that it would be a "deal killer." See **Exhibit D**, May 1, 2015 email.

27. In response, National Restaurant Brokers stated that it would reduce its fee by 10% if Dortch would allow it to sell other Subway restaurants owned by Dortch in the near future or if Dortch could refer two other deals to National Restaurant Brokers. See **Exhibit D**, May 1, 2015 email.

28. On May 7, 2015, National Restaurant Brokers again asked Dortch to agree to the reduced 10% fee so that the parties could move forward. See **Exhibit E**, May 7, 2015 email.

29. In response to this email, Dortch provided revised operating metrics for 2014 and ignored National Restaurant Brokers' request that it agree to the reduced 10% fee. See **Exhibit E**, May 7, 2015 email.

30. On May 8, 2015, Dortch provided additional information addressed to "our National Brokers team." See **Exhibit F**, May 8, 2015 email.

31. Between May 13 and May 18, 2015, Dortch and National Restaurant Brokers worked on a listing package. See **Exhibit G**, May 13-18, 2015 emails.

32. On May 19, 2015, the Dortch Halo Burger restaurant chain was listed with Restsearch.com and National Restaurant Brokers. See **Exhibit H**, Business Listing.

33. By August of 2015, National Restaurant Brokers had advertised the sale of the Halo Burger restaurant chain to over 40,000 potential buyers and had obtained approximately 200 interested buyers. See **Exhibit I**, Buyer Summary.

34. In September of 2015, Chance Richie, principal of Halo Country, expressed interest in buying the Halo Burger restaurant chain to National Restaurant Brokers. See **Exhibit J**, September 25, 2015 email from Richie.

35. Between September 25, 2015 and September 30, 2015, National Restaurant Brokers continued to negotiate with Mr. Richie, as well as his associate Mr. Bailey, to arrive at an agreement on the purchase of the Halo Burger restaurant chain. See **Exhibit K**, September 25-30, 2015 emails.

36. By late October, Mr. Richie and Dortch had not settled on terms, and National Restaurant Brokers was actively and continuously working to sell the Halo Burger restaurant chain. See **Exhibit L**, October 29, 2015 email.

37. Dortch, however, actively concealed that it was in negotiations to sell the Halo Burger restaurant chain to Mr. Richie and failed to disclose its negotiations with Mr. Richie in its discussions with National Restaurant Brokers. See **Exhibit L**, October 29, 2015 email.

38. On January 15, 2016, National Restaurant Brokers was informed, via a press release, that Dortch had sold the Halo Burger restaurant chain to Mr. Richie. See **Exhibit M**, Press Release.

39. On that same day, National Restaurant Brokers contacted Dortch and requested payment. See **Exhibit N**, January 15, 2016 email.

40. On January 19, 2016, National Restaurant Brokers sent Dortch an invoice consistent with its commission arrangement. See **Exhibit O**, January 19, 2016 email.

41. In response, and on January 21, 2016, counsel for Dortch sent a letter to National Restaurant Brokers, which stated that Dortch did not owe National Restaurant Brokers a commission. See **Exhibit P**, January 21, 2016 email.

42. In July of 2016, counsel for National Restaurant Brokers made one last attempt to resolve Dortch's failure to pay commissions short of litigation, but Dortch did not respond. See **Exhibit Q**, July 15, 2016 letter.

## COUNT I – BREACH OF CONTRACT

43. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

44. In May of 2010, Dortch was presented with the terms of the agreement, which outlined the commission structure under which National Restaurant Brokers would provide its services.

45. Upon information and belief, Dortch signed this agreement and returned it to National Restaurant Brokers.

46. In November of 2014, Dortch was again provided with these terms in a letter titled "Authorization for NRB to Proceed."

47. Under this commission structure, National Restaurant Brokers would receive:

    a. 8% for the first $500,000 of the sale price of Halo Burger;

    b. 6% for the next $500,000 of the sale price of Halo Burger;

    c. 4% for the next $500,000 of the sale price of Halo Burger; and

    d. 2% for the remainder of the sale price of Halo Burger.

48. Dortch did not sign the Authorization for NRB to Proceed.

49. Despite its failure to sign the Authorization for NRB to Proceed, Dortch proceeded as if the agreement was in place and requested that National Restaurant Brokers proceed with listing the Halo Burger restaurant chain.

50. Dortch assented to the terms of the Authorization for NRB to Proceed by requesting that National Restaurant Brokers perform.

51. On May 19, 2015, at Dortch's request, National Restaurant Brokers listed the Halo Burger restaurant chain for sale.

52. Thus, National Restaurant Brokers performed by listing the Halo Burger restaurant chain for sale.

53. National Restaurant Brokers provided Dortch with over 40,000 potential buyers, 200 of which were interested in purchasing the Halo Burger restaurant chain.

54. One of these interested buyers was Chance Richie, who was procured by National Restaurant Brokers and is now the owner of Halo Country, LLC.

55. Dortch sold the Halo Burger restaurant chain to Halo Country, LLC for $4,000,000.

56. Upon the sale of the Halo Burger restaurant chain, Dortch was to remit to National Restaurant Brokers $140,000, which was its commission for the marketing services performed.

57. Dortch has failed to make the required payment to National Restaurant Brokers in breach of the agreement.

58. As a result of Dortch's breach, Plaintiffs have suffered damages.

## COUNT III – UNJUST ENRICHMENT

59. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

60. Plaintiffs provided Dortch with a buyer for its Halo Burger restaurant chain.

61. Without Plaintiffs' marketing efforts, Dortch would not have met Mr. Richie and would not have sold the Halo Burger restaurant chain to Halo Country.

62. Through Plaintiffs' marketing efforts, Dortch was provided with a benefit, specifically, the introduction to Mr. Richie and the sale of the Halo Burger restaurant chain to Halo Country.

63. As a result of Plaintiffs' marketing efforts, Dortch sold the Halo Burger restaurant chain to Halo Country for $4,000,000.

64. Dortch has not compensated Plaintiffs for their marketing efforts.

65. Dortch's failure to compensate Plaintiffs for their market efforts has resulted in an inequity to Plaintiff arising out of Dortch's retention of the full $4,000,000 received from the sale of the Halo Burger restaurant chain.

66. Consequently, Dortch has been unjustly enriched.

67. Dortch's unjust enrichment has resulted in damages to Plaintiffs.

## IV.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this honorable Court grant the following relief:

A. That Defendant be held liable for breach of contract in the amount of $140,000 plus interest;

B. That Defendant be held liable for all pre and post judgment interest;

C. That Defendant be held liable for costs and attorneys' fees related to this action; and

D. For such other and further relief as to the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby request a trial by jury for all eligible counts contained within this Complaint.

Dated: November 11, 2016 By: /s/ John Di Giacomo
John Di Giacomo
Eric Misterovich
Revision Legal, PLLC
109 E. Front St.
Suite 309
Traverse City, MI 49684
Phone (231) 714.0100
Fax: (231) 714.0200
Email: john@revisionlegal.com